UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


COMMERCE PARK REALTY, LLC;
COMMERCE PARK PROPERTIES, LLC;
COMMERCE PARK COMMONS, LLC;
COMMERCE PARK ASSOCIATES 4, LLC;
DARTMOUTH COMMONS, LLC;
WARWICK VILLAGE, LLC;
NICHOLAS CAMBIO and VINCENT E. CAMBIO,

    Plaintiffs,

    v.                                             C.A. No. 11-156L

HR2-A CORP., as general partner
  of HR2-A Limited Partnership;
JOHN DOE(S), the limited partners
  of HR2-A Limited Partnership;
HR4-A CORP., as general partner
  of HR4-A Limited Partnership;
JOHN DOE(S), the limited partners of
  HR4-A Limited Partnership;
MR4A-JV CORP., as general partner of
  MR4A-JV Limited Partnership;
JOHN DOE(S), the limited partners of
  MR4A-JV Limited Partnership;
REALTY FINANCIAL PARTNERS;
POTOMAC REALTY CAPITAL, LLC;
BRADCO SUPPLY CORP.;
CONCRETE SYSTEMS, INC.;
TOWN OF WEST GREENWICH Alias;
DAVID ALLEN and DONALD S. BIERER.

    Defendants.

### MEMORANDUM AND ORDER

    This case is before the Court on cross motions for partial summary judgment brought by all Plaintiffs and Defendants HR-2A Corp., HR-4A Corp., MR4A-JV Corp., Realty Financial Partners and David Allen.  Plaintiffs are Rhode Island-based commercial and residential real estate developers.  Moving Defendants are

Massachusetts limited liability companies and their principals. The operative complaint, the Amended Verified Complaint ("the Complaint"),[1] sets forth twenty-four counts, including multiple claims of breach of contract, breach of fiduciary duty, usury and racketeering.  The Complaint outlines a complex series of multi-million dollar real estate loans between the borrower Plaintiffs and the lender Defendants.  Four of these loans are the subject of the parties' cross motions.  According to Plaintiffs, these loans had an original combined face value of approximately $26 million. Plaintiffs state that they have made payments totaling over $27 million.  Nevertheless, when Defendants issued a demand for full repayment on April 11, 2011, the balance on the loans exceeded $147 million.

Plaintiffs also seek various forms of injunctive relief against the lender Defendants and other non-lender Defendants in an effort to clear title to the realty that secures the disputed loans.  The real property in question is several hundred acres of land located in West Greenwich, East Greenwich and Coventry, Rhode Island.

**Standard of Review on cross motions for summary judgment**

When ruling on a motion for summary judgment, the court must look to the record and view all facts and inferences therefrom in the light most favorable to the nonmoving party.  Continental

---

[1] CM-ECF docket no. 3.

Cas. Co. v. Canadian Univ. Ins. Co., 924 F.2d 370, 373 (1st Cir. 1991).  The analysis required for cross motions for summary judgment is the same.  Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009) ("The presence of cross-motions neither dilutes nor distorts this standard of review.").  In evaluating cross-motions, the court must determine whether or not either party is entitled to judgment as a matter of law based upon the undisputed facts.  Id.

## Usury law

Almost all of Plaintiffs' claims arise from their central allegation that Defendants' loans are usurious and, therefore, illegal and unenforceable.  The material facts provided to the Court are minimal and largely undisputed.  The parties have supplied the pertinent loan documents and seek the Court's interpretation of usury laws in Rhode Island and Massachusetts. For reasons that will be explained below, the Court has determined that the loans are not usurious as a matter of law. This determination enables the Court to dispense with many of the disputed claims in a broad sweep.  Consequently, prior to getting mired in the alphabet soup of interrelated borrowers and lenders, the Court will first focus on the law of usury.

### *Rhode Island*

In 2000, under the sponsorship of former Senate president

William V. Irons[2] (and allegedly at the behest of Defendants), the Rhode Island state legislature amended the state's usury statute to add an exemption for some commercial loans. Rhode Island General Law § 6-26-2 had previously capped the permissible rate of interest at 21% per annum. The amendment added subsection (e):

> Notwithstanding the provisions of subsection (a) of this section and/or any other provision in this chapter to the contrary, there is no limitation on the rate of interest which may be legally charged for the loan to, or use of money by, a commercial entity, where the amount of money loaned exceeds the sum of one million dollars ($1,000,000) and where repayment of the loan is not secured by a mortgage against the principal resident of any borrower; provided, that the commercial entity has first obtained a pro forma methods analysis performed by a certified public accountant licensed in the state of Rhode Island indicating that the loan is capable of being repaid.

R.I. Gen. Laws § 6-26-2(e).

In 1997 and 1998 Defendant HR-2A Limited Partnership ("HR-2A") loaned a total of $14,320,000 to Plaintiffs Commerce Park Realty, LLC, Commerce Park Commons, LLC, Commerce Park Associates 4, LLC, Commerce Park Properties, LLC, Nicholas E. Cambio and

---

[2] Senator Irons resigned his seat in 2003 during Operation Dollar Bill, a four-year federal investigation into influence peddling in state government.

Vincent E. Cambio (hereafter collectively "Plaintiffs").[3] In 1999 and 2000, Defendant HR-4A Limited Partnership ("HR-4A") loaned Plaintiffs $7,599,333. According to Plaintiffs, both loans consolidated earlier indebtedness, and neither transaction included the advancement of any new money to Plaintiffs. Both loans soon matured and were modified to increase their interest rates in 2000, a month after the amendment to the usury statute. Counts I and III of the Complaint challenge the legality and enforceability of the loan modifications for these two loans.

In 2003, the loans, as modified, matured and Plaintiffs' obligations became due and payable immediately. Instead, the parties entered into a Forbearance and Conveyance Agreement ("the Forbearance Agreement") dated April 24, 2003. The terms of the Forbearance Agreement stated that the loans were "legal, valid and binding obligations," and included a waiver of any and all claims against the HR-2A and HR-4A Defendants:

> 2. **Waiver-of-Defenses**. The Obligors represent and warrant that each has no defenses, setoffs or counterclaims to the payment of their respective liabilities and obligations to the Lenders. To the extent any such defenses, setoffs, counterclaims ever existed, they are hereby waived and the Lenders are released, remised and forever discharged from any and all claims of any and all of the Obligors in consideration for the Lenders' agreements contained herein.

---

[3] An additional borrower, Roney A. Malafronte, is included in certain of the loan documents, but is not a party to the lawsuit and may be deceased.

-5-

The Forbearance Agreement also raised the interest rate on both loans to 2% compounded monthly, resulting in a rate over the 21% statutory limit.  Paragraph 14 of the Forbearance Agreement is the only paragraph printed all in capital letters, and states in part: "OBLIGORS ARE ENTERING INTO THIS AGREEMENT VOLUNTARILY AFTER HAVING THE OPPORTUNITY TO OBTAIN THE ADVICE OF LEGAL COUNSEL CHOSEN BY OBLIGORS."

On their face, the modified loan documents comply with the requirements of R.I.G.L. § 6-26-2(e).  Borrowers' Certifications accompany the loan modifications, and these certifications state that the appropriate pro forma methods analysis was performed by a Rhode Island certified public accountant.  Although the certifications were executed by Plaintiffs, they now assert that no such analysis was ever performed for either loan and that they were forced to sign the certifications by economic pressures.  Moreover, they claim that Defendants knew full well that no pro forma methods analyses had been prepared.  They assert further that Defendants' inability to produce the pro forma methods analyses for the loans is fatal to their motion for summary judgment on these counts.

Rhode Island's amended usury statute has not been analyzed by the Rhode Island Supreme Court.  The statute includes no definition of what is required in the so-called pro forma methods

analysis;[4] nor does it require any demonstration that an actual analysis was presented to the lender.  While Plaintiffs refer to the Borrowers' Certification as "a fig leaf," it appears to the Court that these certifications demonstrate the requisite compliance with the statute.  Plaintiffs assert that their backs were to the wall when they entered into these agreements with Defendants.  However, Plaintiffs fail to establish a *prima facie* claim for economic duress.  See Ismert and Assocs., Inc., v. New England Mutual Life Ins. Co., 801 F.2d 536, 548-49 (1st Cir. 1986).

Plaintiffs also assert that the loans don't qualify for the usury exemption because not all borrowers were commercial entities.  Plaintiffs Nicholas and Vincent Cambio served as both makers and guarantors for the loans.  Finally, Plaintiffs point out that, after the statutory amendment took effect, the loans were merely rewritten to increase the rate of interest – no additional money was loaned.  This, Plaintiffs argue, is not the intent of the usury exemption, which is instead to stimulate economic development. The Court has researched the statutory

---

[4] The Borrowers' Certifications employed by the parties included their own definition: "For the purposes of this certification, the Borrowers represent that the term "pro forma methods analysis" means an analysis of historical sales data, lease valuations based on existing leases and a review of appraisals of existing leases performed for other financial institutions, which analysis indicates that the cash flow value to loan ratio expressed as a percentage exceeds one hundred percent (100%)."

amendment and found that no legislative history is available to support Plaintiffs' interpretation or any other interpretation of legislative intent.

However, a careful reading of the amendment reveals no requirement that new money be loaned in order to invoke the usury exemption. Instead, the amendment provides that the exemption applies "for the loan to, <u>or use of money by</u>, a commercial entity...," (emphasis added). The inclusion of this phrase appears to contemplate transactions such as the present refinancing arrangement. Furthermore, the Court finds that the borrowers here are commercial entities; the participation of Nicholas and Vincent Cambio as guarantors of the loans does not transform the various Commerce Park LLCs into non-commercial entities. Consequently, the Court holds that the transactions comply with the usury exemption, as codified in R.I.G.L. § 6-26-2(e).

The waiver included in the Forbearance Agreement provides further cover for Defendants to avoid liability for usury. <u>See</u> <u>DeFusco v. Giorgio</u>, 440 A.2d 727, 732 (R.I. 1982)("...waiver of a usury defense should be permitted when it is freely and knowingly made..."). The Court thus denies summary judgment to Plaintiffs, and grants it to Defendants on Counts I and III of the Complaint, resulting in the dismissal of these counts from the lawsuit.

### *Massachusetts law of usury*

Two of the disputed loans were issued in accordance with Massachusetts law, and their terms dictate that they will be governed by the law of that state.  In Massachusetts, in order to charge a rate of interest over the statutory limit of 20%, a lender must send a letter to the Attorney General disclosing its intention to charge interest in excess of the statutory limit, and must maintain internal records with details of the transaction.  Mass. G.L. c. 271, § 49(d).  In 2000, following the timely submission of such a letter, Defendant HR-4A loaned $4,300,000 to Plaintiffs Dartmouth Commons, LLC, Nicholas Cambio and Vincent Cambio.  After receiving a demand in 2005, Plaintiffs executed and delivered an Amended and Restated Promissory Note to Defendant HR-4A, which included a 1.75% interest rate compounded monthly.  Plaintiffs now assert that Defendants HR-4A's letter to the Massachusetts Attorney General inaccurately identified the lender, and was otherwise non-compliant with the statutory requirements.  However, the document submitted to the Court correctly names the lender as Defendant HR-4A, and complies in full with the Massachusetts statute.  See Levites v. Chipman, 30 Mass. App. Ct. 356, 361-2, 568 N.E.2d 639, 642 (1991)(when "notice was on file at the time loan proceeds were distributed...and records were apparently kept of the transaction, interest rates in promissory note were not

illegal"). Consequently, the Court holds that this loan is legal and enforceable as a matter of law. Accordingly, the Court denies Plaintiffs' motion, and grants summary judgment for Defendants on Count VII, dismissing this Count from the lawsuit.

The circumstances of the second Massachusetts loan are similar. In 2003, Defendant HR-4A provided a loan in the amount of $350,000 to Plaintiff Commerce Park Properties, LLC. Defendant submitted the appropriate letter to the Massachusetts Attorney General in connection with this transaction. Moreover, this loan was included in the 2003 Forbearance Agreement. As explained above, the Forbearance Agreement included Plaintiffs' waiver of all potential claims against the lender Defendants. Plaintiffs now claim that this loan violates Rhode Island's usury statute; however, this loan is governed by Massachusetts law because the terms of the underlying 2003 promissory note were unchanged by the Forbearance Agreement. Not only is the rate of interest permissible under Massachusetts law (after appropriate notice), but any potential claims against the lenders were discharged by the binding waiver included in the Forbearance Agreement. This loan is the subject of Plaintiffs' Count V. Summary judgment being granted on this Count in favor of the Defendants, and denied to the Plaintiffs, Count V is dismissed from the lawsuit.

## Analysis of other counts

### *RICO claims*

Plaintiffs' Counts II, IV, VI and VIII allege that Defendants' efforts to collect on the four loans represent the attempted collection of unlawful debt in violation of Rhode Island's Racketeering Influenced Corrupt Organizations Act, R.I.G.L. § 7-15-2, known as "RICO." Since the Court has determined that the underlying loans are proper and not usurious, Defendants' efforts to collect these debts cannot serve as a predicate to a RICO violation. In re Giorgio, 862 F.2d 933, 937 (1st Cir. 1988). Consequently, the Court grants Defendants' motions for summary judgment on Counts II, IV, VI and VIII, and denies Plaintiffs' motion on these same counts. These Counts are dismissed from the lawsuit.

### *Equitable and contract claims*

The remaining claims that are subject to the parties' cross motions for summary judgment are Counts XI - XIV, XVII and XX. These concern liens held by moving and non-moving Defendants on a one-acre piece of property in West Greenwich ("the Bismarck property"), as well as liens on the remaining West Greenwich and Coventry properties, all of which Plaintiffs claim are invalid because they arise from the allegedly usurious loans.

Finally, in Count XX, Plaintiffs assert that Defendants' refusal to release the mortgages on the Bismarck property

represents a breach of contract.  Plaintiffs assert that they have a prospective buyer for the Bismarck parcel, but that they are unable to sell it because of Defendants' wrongful liens. Plaintiffs seek removal of all liens, and other related relief that would allow the sale to go forward.

Stating in their memorandum that, "Once a court has determined that a loan is usurious, every contract and mortgage derived from it is void," Plaintiffs ask this Court to exercise its powers of equity to void all liens on properties that secure the allegedly usurious loans.  Moving Defendants assert that these counts must be summarily dismissed, as the underlying loans giving rise to the liens are valid, and not usurious.

According to Plaintiffs's memorandum, the remedies sought in Counts XI, XII, XIII, XIV, XVIa and XVII "follow upon a finding of usurious loans, and are within the equity powers of the Court."  Because the Court has found that the loans are not usurious as a matter of law, the Court denies Plaintiffs' Motion for Summary Judgment on these Counts, and grants the moving Defendants' motion.  Pursuant to its powers under Federal Rules of Civil Procedure 56(f), the Court also dismisses these Counts as to non-moving Defendants Bradco Supply Corp., Concrete Systems, Inc., and the Town of West Greenwich.  Plaintiffs assert that the impropriety of these Defendants' liens stem from the allegedly usurious loans of the moving Defendants.  Because the

Court has found that the loans are not usurious, these claims against Defendants Bradco Supply Corp., Concrete Systems, Inc., and the Town of West Greenwich cannot be maintained as a matter of law.

In Count XIV, Plaintiffs request that the Court appoint a trustee to aid in the sale of the Bismarck property. This property secures loans of the moving Defendants, as well as non-moving Defendant Potomac Realty Capital, LLC ("Potomac Realty"). The loan issued by Potomac Realty is the subject of Count IX and X, on which there have been no motions presented to the Court. To the extent that the resolution of Count XIV involves the resolution of the claims against Defendant Potomac Realty, this portion of Count XIV may proceed to trial.

## Conclusion

For the reasons set forth above, the Court rules on the parties' cross motions for summary judgment, leaving the disposition of the case as follows:

1. Count I - usury

   Plaintiffs' motion is denied; Defendants' motion is granted. Count I is dismissed.

2. Count II - RICO

   Plaintiffs' motion is denied; Defendants' motion is granted. Count II is dismissed.

3.  Count III – usury

    Plaintiffs' motion is denied; Defendants' motion is granted. Count III is dismissed.

4.  Count IV - RICO

    Plaintiffs' motion is denied; Defendants' motion is granted. Count IV is dismissed.

5.  Count V – usury

    Plaintiffs' motion is denied; Defendants' motion is granted. Count V is dismissed.

6.  Count VI - RICO

    Plaintiffs' motion is denied; Defendants' motion is granted. Count VI is dismissed.

7.  Count VII - usury

    Plaintiffs' motion is denied; Defendants' motion is granted. Count VII is dismissed.

8.  Count VIII – RICO

    Plaintiffs' motion is denied; Defendants' motion is granted. Count VIII is dismissed.

9.  Count IX – usury against Potomac Realty

    No motion having been made, this Count will go forward to trial.

10. Count X – RICO against Potomac Realty

    No motion having been made, this Count will go forward to trial.

11. Count XI – Title clearance and lien removal – Bismarck

   Plaintiffs' motion is denied; Defendants' motion is granted. Count XI is dismissed in its entirety against moving Defendants and non-moving Defendants.

12. Count XII – Title clearance and lien removal – West Greenwich

   Plaintiffs' motion is denied; Defendants' motion is granted. Count XII is dismissed in its entirety against moving Defendants and non-moving Defendants.

13. Count XIII – Title clearance and lien removal – Coventry

   Plaintiffs' motion is denied; Defendants' motion is granted. Count XII is dismissed in its entirety against moving Defendants and non-moving Defendants.

14. Count XIV – Injunctive relief to permit sale of Bismarck property

   Plaintiffs' motion is denied; Defendants' motion is granted as to moving Defendants only. To the extent that this Count involves Defendant Potomac Realty Capital, this Count will go forward to trial.

15. Count XV – Injunctive relief to order an accounting

   No motion having been made, this Count will be put forward for trial.

16. Count XVI – Injunctive relief to restrain Defendants' collection of notes during pendency of action

This duplicate-numbered count is designated as XVIa by the Court. Plaintiffs' motion is denied; Defendants' motion is granted.  Count XVIa is dismissed from the lawsuit.

17. Count XVI – Injunctive relief to restrain Defendant Potomac Realty's collection of notes during pendency of action

    This duplicate-numbered count is designated as XVIb by the Court.  No  motion having been made, Count XVIb will go forward to trial.

18. Count XVII – Injunctive relief to restrain collection from guarantors Nicholas and Vincent Cambio

    Plaintiffs' motion is denied; Defendants' motion is granted. Count XVII is dismissed.

19. Count XVIII – tortious interference with Bismarck contract

    No motion having been made, Count XVIII will go forward to trial.

20. Count XIX – breach of contract for predatory loan servicing

    No motion having been made, Count XIX will go forward to trial.

21. Count XX – breach of contract: refusal to release mortgage on Bismarck property violates covenant of good faith

    Plaintiffs' motion is denied; Defendants' motion is granted. Count XX is dismissed.

22. Count XXI – breach of fiduciary duty claim by Plaintiff Warwick Village against Defendant MR4A-JV

    No summary judgment motions being filed, Count XXI will go

forward to trial.

23. Count XXII – breach of fiduciary duty brought by Commerce Park and Warwick Village against MR4A-JV

No motion having been made, Count XXII will go forward to trial.

24. Count XXIII – breach of fiduciary duty against Defendant Donald S. Bierer

No motion having been made, Count XXIII will go forward to trial.

No judgment shall enter until all claims have been resolved.

It is so ordered.

/s/Ronald R. Lagueux
Ronald R. Lagueux
Senior United States District Judge
October 10, 2012